**Reversed and Rendered and Majority Opinion and Dissenting Opinion filed May 10, 2012.**



In The

# Fourteenth Court of Appeals

———————————

### NO. 14-11-00349-CV

———————————

**839 E. 19TH STREET, L.P., Appellant**

**V.**

**SCOTT FRIEDSON D/B/A NATIONAL INCOME PROPERTY, LLC, Appellee**

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2007-74965**

# D I S S E N T I N G    O P I N I O N

Because I find that the second offer brokered by Friedson on May 30, 2006, also called 839 E. 19th Street's attention to the Mesa Ridge property, and because that date falls within the agreement period, I respectfully disagree that paragraph 11B of the buyer's representation agreement does not apply. Accordingly, I would overrule 839 E. 19th

Street's first and second issues. I also would overrule 839 E. 19th Street's third and fourth issues and affirm the trial court's judgment.

In its first issue, 839 E. 19th Street contends that the agreement contained a condition precedent requiring Friedson to send 839 E. 19th Street written notice identifying any properties in the market area called to 839 E. 19th Street's attention during the agreement period before the protection period would apply. In its second issue, 839 E. 19th Street argues that Friedson failed to give written notice and that his failure was not excused.[1] "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). To determine whether a condition precedent exists, we look at the contract to ascertain the intent of the parties. *Id.* at 109. Conditional language such as "if," "provided that," or "on condition that" must generally be included in order to make performance specifically conditional. *Id.*

> The contested language in Paragraph 11B states:
>
> Not later than 10 days after this agreement ends Broker may send Client written notice identifying the properties in the market area called to Client's attention during this agreement. If during the protection period Client agrees to acquire all or part of any such property, Client will pay Broker, upon closing, an amount equal to the fees Broker would have been entitled to receive had Client acquired the property during the term of this agreement.

The "may" language found in the first sentence provides the broker with the election of whether or not to invoke the protection period. However, the "if" language in the next sentence makes the payment of fees to the broker for properties purchased outside the agreement period but during the protection period[2] subject to the condition precedent that

---

[1] The trial court found that "the language in the [agreement] regarding the 'protection period' was permissive rather than mandatory."

[2] The client only needed to "agree[] to acquire" the property during the protection period; paragraph 11B does not require that the closing take place during the 120-day period.

2

the broker provide written notice identifying the protected properties. Therefore, I would find that paragraph 11B is a condition precedent.[3] *See Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 357 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (language stating that "[i]f the parties cannot agree within 10 days on a different method of resolving the matter" created a condition precedent). I respectfully disagree with the majority that only the April 7, 2006 offer brokered by Friedson called attention to the Mesa Ridge property. I would hold that the second offer brokered on May 30, 2006, also called attention to the Mesa Ridge property. Accordingly, I would conclude that Friedson sufficiently called 839 E. 19th Street's attention to the Mesa Ridge property during the agreement period.[4]

Because I would conclude that paragraph 11B is a condition precedent, I must decide whether Friedson satisfied the condition precedent. Friedson did not send a separate written notice to 839 E. 19th Street that he intended Mesa Ridge to be covered by the protection period.[5] However, paragraph 17 of the buyer's representation agreement provides a special provision: "BUYER REPRESENTATION AGREEMENT LIMITED TO MESA RIDGE APARTMENTS." Under the unique facts of this case, where the agreement expressly identifies on its face only one specific piece of property—the Mesa Ridge property—it was not necessary for Friedson to notify 839 E. 19th Street in a separate notice that Mesa Ridge was a property called to its attention during the agreement.[6] I would therefore overrule 839 E. 19th Street's first and second issues.

---

[3] The trial court may be affirmed even though it entered an erroneous conclusion of law, so long as the trial court rendered the proper judgment. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[4] The agreement period ran from May 9, 2006, through September 29, 2006.

[5] Under Paragraph 11B of the agreement, notice must be given "not later than 10 days after this agreement ends."

[6] The trial court found that "[b]ecause only one property was involved in the [agreement], designation was not necessary to invoke the protection period."

In its third issue, 839 E. 19th Street argues that, assuming paragraph 11B is not a condition precedent or a condition for which performance was excused, the trial court applied the wrong standard in determining Friedson's entitlement to a broker's fee under the buyer's representation agreement. The agreement provides protection for properties "called to the Client's attention during this agreement." The trial court applied a "procuring cause" standard.[7] 839 E. 19th Street further complains in its fourth issue that Friedson cannot recover under the "called attention to" standard because Borenstein found the property in an internet search prior to the agreement.

Friedson argues that "procuring cause" is the applicable standard. "'Procuring cause' is defined as 'the cause originating a series of events, which, without [a] break in their continuity, result in the accomplishment of the prime object.'" *Truman Arnold Cos. v. Hammond & Consultants Enters., Inc.*, No. 12-09-00099-CV, 2010 WL 2982912, at *8 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op.) (quoting BLACK'S LAW DICTIONARY 1208). "Thus, 'a broker will be regarded as the "procuring cause" of a sale, so as to be entitled to commission, if his or her efforts are the foundation on which the negotiations resulting in a sale are begun.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1208). According to Friedson, the law allows a broker's rights to a commission to continue for a reasonable time after termination of a broker's contract, so that the broker will not be deprived of his commission. *See Ramesh v. Johnson*, 681 S.W.2d 256, 259 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). 839 E. 19th Street does not challenge Friedson's efforts on its behalf or the connection of those efforts to the Waloon Properties sale.

The agreement permitted Friedson to identify properties "called to" 839 E. 19th Street's attention during the agreement. *See Kaye v. Coughlin*, 443 S.W.2d 612, 613 (Tex. Civ. App.—Eastland 1969, no writ) (rendering judgment for realtor where jury found

---

[7] The court found "that Friedson was the procuring cause of the January 29, 2007, transaction," *i.e.*, 839 E. 19th Street's purchase of Mesa Ridge.

realtor called buyer's attention to property, though jury also found that sale did not result from efforts of Realtor, and applying contract term to pay commission "if said property is sold . . . to any purchaser whose *attention had been called to* [that] particular property" [emphasis added]).  Appellant has not cited and research has not revealed authority that establishes or defines as a matter of law a "called attention to" standard for broker's commissions generated during a protection period.

Nothing in the plain language of the agreement limits "calling attention to" only to the initial discovery of a property.   I disagree with the majority that the first offer brokered by Friedson would forever bar him from later "calling attention to" the property.   I disagree as well that a potential buyer could discover a property through an internet search, as 839 E. 19th Street claims here, through a newspaper advertisement, or by driving down the street and, in so doing, forever bar a broker from later "calling his attention to" the property, regardless of the broker's time and effort towards the sale.

However, I need not decide whether a "called attention to" standard exists or, if it does, which standard applies here.   Under the unique circumstances of this case and the specific language of this agreement, which expressly designates the property at issue, the evidence is sufficient to support the trial court's findings of fact.   The court found, in part, that "Friedson brokered a second offer" and that "[t]he [second offer] was essentially equivalent to the transaction in which the sale was completed."   Under those findings, which are supported by the evidence,[8] Friedson called 839 E. 19th Street's attention to the property, and his efforts were the foundation on which the negotiations resulting in a sale began.   I would therefore overrule 839 E. 19th Street's third and fourth issues.

---

[8] The second offer was for $6,250,000.00.   839 E. 19th Street's purchase of Mesa Ridge was for $6,350,000.00.

Because I would overrule 839 E. 19th Street's four issues, I would affirm the trial court's judgment.

/s/           Martha Hill Jamison
                    Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally. (McCally, J., majority).